UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK JAMES MCLEMORE,

               Plaintiff,                    CIVIL NO. 2:07-CV-11340

vs.                                DISTRICT JUDGE LAWRENCE P. ZATKOFF
                                MAGISTRATE JUDGE STEVEN D. PEPE

THOMAS K. BELL, WARDEN,

               Defendant.
_____/

**REPORT AND RECOMMENDATION DENYING MOTION FOR EVIDENTIARY HEARING
REGARDING INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (DKT. #15)**

      Petitioner is a Michigan prisoner serving a sentence of life in prison for first-degree felony murder, MCL 750.316, and a concurrent sentence of 18 ¾ to 50 years for carjacking, MCL 750.529a.  Petitioner filed for a writ of habeas corpus requesting relief from these convictions on March 28, 2007 (Dkt. #1).  On April 7, 2008, Petitioner also filed a Motion for Evidentiary Hearing Regarding Ineffective Assistance of Appellate Counsel (Dkt. #15).  Petitioner's motion was referred pursuant to 28 U.S.C. § 636(b) (Dkt. #16).  Respondent has filed his response (Dkt. #18).  For the reasons indicated below, it is **RECOMMENDED** that Petitioner's Motion for Evidentiary Hearing be **DENIED**.

I.     **BACKGROUND**

      In his state court case, Petitioner was charged with five counts, which included: (1) open murder; (2) felony murder; (3) armed robbery; (4) carjacking; and (5) home invasion in the first degree (Dkt. #14, Ex. 1).  On December 8, 1999, Petitioner was convicted of (1) first-degree felony murder, M.C.L. 750.316(10)(b), (2) armed robbery, M.C.L. 750.529, (3) carjacking,

M.C.L. 750.529a, and (4) first-degree home invasion, M.C.L. 750.110a2, following a jury trial in the Genesee County Circuit Court at which Dennis R. Lazar represented Petitioner (Dkt. #1; Dkt. #14, Ex. #7). The jury rejected the premeditated murder charge. On January 31, 2000, the state trial judge, Judith A. Fullerton, sentenced Petitioner to concurrent terms of life in prison for the felony murder, 18 3/4 to 50 years for both the armed robbery and carjacking convictions, and 95 months to 20 years for the home invasion conviction. Judge Fullerton subsequently vacated the felonies of armed robbery and home invasion on double jeopardy grounds as predicate felonies to the felony murder conviction.

On his appeal of right, the Michigan Court of Appeals affirmed the convictions in an unpublished December 20, 2002, *per curiam* opinion. James Rubiner was counsel in the Court of Appeals. On December 29, 2003, the Michigan Supreme Court denied Petitioner's application seeking leave to appeal. Thomas Loeb was counsel in the Michigan Supreme Court. Following completion of the appeal by right, on August 25, 2004, Petitioner McLemore filed a Motion for Relief from Judgment pursuant to M.C.R. 6.502 raising issues not presented on direct appeal. The Genesee County Circuit Court denied the Motion for Relief from Judgment on December 6, 2004, and the Michigan Court of Appeals denied leave to appeal. On November 30, 2006, the Michigan Supreme Court denied Petitioner's application seeking leave to appeal. Laura Kathleen Sutton was counsel in the trial court, Court of Appeals and Michigan Supreme Court.

Petitioner is serving a controlling sentence of life in prison and is currently serving his sentence at the Carson City Correctional Facility, Carson City, Michigan. Respondent, Thomas K. Bell, is Warden of that Michigan Department of Corrections correctional facility.

In his present motion, Petitioner moves for an evidentiary hearing on Issue VI of the

petition.  Petitioner's writ of habeas corpus states Issue VI as:

> Petitioner Is Entitled to Habeas Relief Because He Was Denied
> His Right to the Effective Assistance of Counsel on His Direct
> Appeal.

(Dkt. #15, p. 1; Dkt. #1, p. 9 of 50).

The claim is relevant to the petition because it constitutes Petitioner's "cause" argument to

excuse his procedural default of two of his six issues, Issues I and II.

Petitioner's writ of habeas corpus states Issue I as:

> The State Trial Court Violated Petitioner's Constitutional Rights To Due Process
> And A Fair Trial Where It Gave Instructions That Did Not Adequately Instruct The
> Jury On The Law To Be Applied During Deliberations

(Dkt. #1, p. 8 of 50).

Petitioner's writ of habeas corpus states Issue II as:

> The State Court Prosecutor's Repeated Misconduct Was So Egregious That It
> Wholly Undermined The Trial, Rendered The Verdict Unreliable, And Deprived
> Petitioner Of Due Process And An Impartial Trial By Jury As Guaranteed By The
> Fifth And Fourteenth Amendments To The Federal Constitution

(*Id.*).

## II.   ANALYSIS

### A.   STANDARD OF REVIEW

A federal district court should grant an evidentiary hearing if the petitioner can

demonstrate that "(1) the grounds he alleges are sufficient to secure his release from custody, (2)

relevant facts are in dispute, and (3) the state court did not provide a full and fair evidentiary

hearing." *Washington v. Renico*, 455 F.3d 722, 731 (6th Cir. 2006) (citing *Bowling v. Parker*,

344 F.3d 487, 512 (6th Cir. 2003).  Yet, "bald assertions and conclusory allegations do not

provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) (citation omitted), *cert. denied*, 537 U.S. 831, 123 S. Ct. 136 (2002).

### B.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner attempts to establish cause to excuse his procedural default by stating that his appellate counsel was ineffective for failing to raise these claims in his appeal.  Attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A comparable test applies to claims of ineffective assistance of appellate counsel.  *See Smith v. Jago*, 888 F.2d 399, 405 n. 1 (6th Cir.1989). Appellate counsel can only be found to have provided ineffective assistance of counsel "if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

With respect to the performance prong of the *Strickland* test, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id*. at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

4

would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir.1996) (quoting *Strickland*, 466 U.S. at 686).

The mere failure to raise a claim, even if it is meritorious on appeal, does not constitute ineffective assistance of appellate counsel sufficient to establish cause to excuse a procedural default. *Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994). The United States Supreme Court, in *Smith v. Robbins*, 520 U.S. 259 (2000), stated, among other things:

> In *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) [parallel citations omitted], we held that appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")

*Smith*, 520 U.S. at 288; *see also McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000) (where claim was not "dead bang winner," the petitioner's appellate counsel's failure to raise it on direct appeal did not constitute cause to excuse procedural default).

### Issue I: Inadequate Jury Instructions

Here, Petitioner would not have been able to succeed on Issue I (Inadequate Jury Instructions) on appeal because it was waived by trial counsel. Petitioner's Issue I contends that the state trial court violated Petitioner's Constitutional rights to due process and a fair trial when

it gave instructions that did not adequately instruct the jury on the law to be applied during deliberations (Dkt. #1, p. 8 of 50).  Respondent argues that trial counsel's acquiescence to the instruction amounted to a waiver of objection and appeal (Dkt. #18, p. 2).  Respondent cites to a comment by the trial court that "any issue with respect to the adequacy of the court's instruction to the jury was waived by trial counsel at the close of those instructions" (Dkt. #14, Ex. #26).[1]

At trial, the prosecutor indicated that there had been discussions regarding the jury instructions on felony-murder and "it is my understand[ing] that we have decided that the instruction will stand as it presently is, we are not going to give any further instructions" (Dkt. #14, Ex. #26, Trial Transcript 1553:21-24).  Trial defense counsel responded "That's my understanding, Judge--" (*Id.* at 1553:25).  Because defense counsel approved the decision to leave the jury instructions as they were, Petitioner waived this issue and his right to appeal.  As a result, appellate counsel was barred from raising the issue.  *People v. Carter*, 462 Mich. 206, 214-15 (2000) ("Because defense counsel approved the trial court's response, defendant has waived this issue on appeal.").  It is well established Michigan law that "a party cannot request a certain action in the trial court and then argue on appeal that the action was error." *People v. McCray*, 533 N.W.2d 359, 361 (Mich. Ct. App. 1995) citing *People v. Murry*, 106 Mich. App. 257, 262, 307 N.W.2d 464 (1981).  Petitioner, therefore, waived review of alleged instructional error when he not only withdrew his request of the omitted instruction, but also approved the instructions as given.

As discussed below, even if the Petitioner had not waived his right of appeal on this

---

[1]Both Respondent (Dkt. #18) and the Michigan Court of Appeals (Dkt. #14, Ex. #31) cite to this quote, but it does not appear on the page in the Trial Transcript that they cite to.

issue, he would not have succeed because his claim of inadequate jury instructions fails on the

merits.  In his petition, Petitioner separates out two distinct ways he believes his jury was

provided inadequate instructions: (A.) on aiding and abetting felony murder and (B.) on the

instruction on the necessity of a unanimous verdict.

### A.      Inadequate Instruction on Aiding and Abetting

In its instructions to the jury, after instructing the jury on Count One, first degree

premeditated murder (Dkt. #14, Ex. #26, Trial Transcript, pp. 1531-1532) the state trial court

instructed on felony murder, including the three elements necessary to find Petitioner guilty.

Petitioner does not object to the state trials court's instruction, and in fact, indicates that the state

trial court "first correctly instructed on felony murder" (Dkt. #1, p. 27 of 50).  Those instructions

are as follows:

> Regarding Count Two, the charge is known as First Degree Felony Murder.  To
> prove this charge the prosecutor must prove each of the following elements beyond
> a reasonable doubt.  First, that this defendant caused the death of Oscar Manning,
> again that is, that Oscar Manning died as a result of having been beaten by the
> defendant.
>
> Second, that the defendant had one of these three state of minds.  Either, he intended
> to kill, or he intended to do great bodily harm to Oscar Manning, or he knowingly
> created a very high risk of death or great bodily harm knowing that death or such
> harm would be the likely result of his actions.
>
> Third, that when he did the act or acts that caused the death of Oscar Manning the
> defendant was committing or helping someone else commit either the crime of
> Robbery or Larceny or Breaking and Entering.
>
> For the crime of First Degree Felony Murder, accordingly, the prosecutor must prove
> each of the following elements as to one of the designated felonies beyond a
> reasonable doubt.

(Dkt. #14, Ex. #26, Trial Transcript, pp. 1532-1533).

The state trial court later instructed on the concept of aiding and abetting.  While the

7

charge seems to be limited to murder, robbery, carjacking or home invasion, Petitioner contends

it likely caused error in being applied to felony murder.  The challenged instruction was as

follows:

> All right, members of the jury, in the state of Michigan we have a statute that provides that all person who aid, abet or assist others in the commission of felony crimes are equally guilty.
>
> In this case the defendant may be considered guilty as directly committing these offense as charged or by intentionally assisting someone else in committing them. Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits the crime and can be convicted of the crime as an aider and abetter. To prove the charge under this theory the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First, that the alleged crime or crimes were actually committed either by the defendant or someone else. It does not matter whether anyone else has been convicted of the crimes.
>
> Second, that before or during the crime or crimes the defendant did something to assist in the commission of the crimes.
>
> Third, the defendant must have intended the commission of the crime alleged or must have known the other person intended its commission at the time he gave the assistance. In determining whether the defendant intended to help someone else commit the charged offenses, members of the jury, of either Murder, Robbery, Carjacking or Home Invasion, you may consider whether those offenses were fairly within the common unlawful activity of those defendants at that time on that night or early morning, that is, whether the defendant might have expected the charged offense to happen as part of that activity.  There can be no criminal liability for any crime not fairly within the common unlawful activity.  It is not sufficient for the prosecutor just to prove the defendant intended to help another in the common unlawful activity, it is necessary the prosecutor—for the prosecutor to prove beyond a reasonable doubt that the defendant intended to help someone else commit the charged crimes. It does not matter, members of the jury, however, how much help, advice or encouragement the defendant gave the other person, however, you must decide whether the defendant intended to help the other person commit the crime and whether his help, advice or encouragement actually did help, advise or encouraged the commission of those crimes as I have previously described them for you.
>
> And further, members of the jury, even if the defendant knew the alleged crime or crimes were planned or were being committed, the mere fact he was present when

they were committed is not enough to prove that he assisted the other person in committing them.

Members of the jury, to convict the defendant the evidence must convince you beyond a reasonable doubt that the crimes alleged occurred on or about June 16 or I'm sorry, June 14 through 16 within the City of Burton, County of Genesee, State of Michigan.

(Dkt. #14, Ex. #26, Trial Transcript, pp. 1545-1547).

Petitioner argues that the flaw in the above instruction is that it failed to inform or it mislead the jury as to what the prosecutor had to prove in order to find that Petitioner aided and abetted a felony murder. Petitioner argues that a reasonable juror could find that because Petitioner admitted to aiding and abetting *some* of the charged crimes that he was by admission guilty of aiding and abetting a felony murder solely on the basis of that admission (Dkt. #1, p. 28-29 of 50). That, Petitioner argues, is precisely what the prosecutor told them in his closing argument (Dkt. #1, p. 29 of 50).[2]

---

[2] In his closing argument, the prosecutor made the following statement:

I wanna move on to the second count that you're going to hear, Felony Murder. Felony Murder is essentially Second Degree Murder that occurs during the commission of some other crime. In this case a larceny, a breaking and entering, or a robbery. Again, Second Degree Murder, either intent to kill, intent to do great bodily harm, or that acting in wanton and wilful disregard the likelihood of your actions will cause death or great bodily harm during a larceny, there was absolutely a larceny here, a breaking and entering, there is absolute1y a breaking and entering, or a robbery, there is no question, Mr. Manning was robbed.

\* \* \*

I have spent a great deal of time explaining to you why you shouldn't believe him, but even if you believe every word he said, he is still is guilty because he is assisting somebody else commit this (sic) terrible crimes, and the law says it doesn't matter how much help, it doesn't matter that you even assisted just a little bit, if you helped someone commit a crime you're just as guilty, and that is if you believe everything he told you.

(Dkt. #14, Ex. #26, Trial Transcript, pp. 1459, 1462).

The substantive requirements for finding someone guilty of aiding and abetting felony murder were succinctly described by the Michigan Supreme Court in *People v. Riley*, 468 Mich 135, 140-141 (2003):

> To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. *People v. Carines*, 460 Mich 750, 755; 597 NW 2d 130 (1999).
>
> In order to satisfy the malice standard required under *People v. Aaron*, 409 Mich 672, 299 NW 2d 304 (1980), the prosecution must show that the aider and abettor either intended to kill, intended to cause great bodily harm, or wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm. Further, if an aider and abettor participates in a crime with knowledge of the principal's intent to kill or to cause great bodily harm, the aider and abettor is acting with "wanton and willful disregard" sufficient to support a finding of malice. *See id.* at 733; *People v. Kelly*, 423 Mich 261; 378 NW 2d 365 (1985).

Here, Petitioner does not allege that the felony murder instructions were inadequate or ambiguous, but rather he only alleges that the instructions on aiding and abetting if applied to felony murder — and not limited to the charges of murder, robbery, carjacking or home invasion which the instruction referred to —  were inadequate and ambiguous (Dkt. #1, p. 27-28 of 50). Specifically, the Petitioner alleges that based on the improper instructions "[a] reasonable juror could [have found] that because Petitioner McLemore admitted to aiding and abetting some of the charged crimes that he was by admission guilty of aiding and abetting a felony murder solely on the basis of that admission." (*Id.* at p. 13-14 of 50).  Yet, this interpretation ignores the clear instructions for felony murder that the judge had given earlier, and which Petitioner agrees were correct.  These included the clear limitation that:

10

Either, he intended to kill, or he intended to do great bodily harm to Oscar Manning, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

Third, that when he did the act or acts that caused the death of Oscar Manning the defendant was committing or helping someone else commit either the crime of Robbery or Larceny or Breaking and Entering.

Even the portion of the prosecutor's argument that Petitioner complains about reiterated  the malice elements of felony murder of " either intent to kill, intent to do great bodily harm, or that acting in wanton and wilful disregard the likelihood of your actions will cause death or great bodily harm during a larceny."

If one assumes the jury applied the aiding and abetting instructions in its finding of the predicate felonies of armed robbery, carjacking or home invasion, there is no error.  This is because the felony murder charge given to the jury clearly required that in addition to finding that the death occurred during the commission of an armed robbery, carjacking or home invasion (felony murder element three) that felony murder element two required that the:

defendant had one of these three state of minds.  Either, he intended to kill, or he intended to do great bodily harm to Oscar Manning, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

Thus, reading the jury instructions as a whole, this malice element of felony murder had to be found whether the finding on the predicate felony was found directly or by way of aiding and abetting.

If instead of an alternative means of showing Defendant committed a predicate felony for the felony murder, the aiding and abetting instruction was applied to the felony murder charge itself, again there was no error.  This is because the aiding and abetting instruction was given and included the limitation:

11

In determining whether the defendant intended to help someone else commit the charged offenses, members of the jury, of either Murder, Robbery, Carjacking or Home Invasion, you may consider whether those offenses were fairly within the common unlawful activity of those defendants at that time on that night or early morning, that is, whether the defendant might have expected the charged offense to happen as part of that activity.

This did not distract from the felony murder second requirement of:

Either, he intended to kill, or he intended to do great bodily harm to Oscar Manning, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

Even if the jurors applied this aiding and abetting instruction to the felony murder itself as being committed by the other participant, Nathan Reid – and not to the robbery, carjacking or home invasion charges – it would still have satisfied the malice element, because Petitioner would have had to be found to have had that offense of felony murder "fairly within the common unlawful activity of those defendants at that time on that night." This means that the felony murder element number two – the intention to kill, or the intention to do great bodily harm to Oscar Manning, or the intention to knowingly create a very high risk of death or great bodily harm to Oscar Manning – would have had to have been "fairly within the common unlawful activity of" Petitioner and his co-defendant Reid. Again the instruction on aiding and abetting states:

It is not sufficient for the prosecutor just to prove the defendant intended to help another in the common unlawful activity, it is necessary the prosecutor—for the prosecutor to prove beyond a reasonable doubt that the defendant intended to help someone else commit the charged crimes.

Again the "charged crime" of felony murder had the malice element number two.

Petitioner's argument also ignores the strong facts that existed in the record that a reasonable jury could have come to the conclusion that Petitioner was principally responsible for

causing great boldly harm to and ultimately killing Mr. Manning and thus clearly found that Petitioner "[e]ither . . . intended to kill, or . . . intended to do great bodily harm to Oscar Manning, or . . . knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions."

As acknowledged in the fact section of Petitioner's writ of habeas corpus, several acquaintances of Petitioner McLemore and Reid related conversations and/or observations regarding McLemore and Reid being in possession of the items missing from Manning's home (Dkt. #1, p. 20 of 50; Dkt. #14, Ex. #17, Trial Transcript, pp. 499, 505, 525-535). The statements of Phillip Michael Donnelly claimed that Petitioner made admissions indicating that he had struck Mr. Manning with a wrench and dropped a television on Manning (Dkt. #14, Ex. #17, Trial Transcript, p. 525). Specifically, Mr. Donnelly testified to the following:

> A    I asked PJ, I told him to come back into the hallway and I asked him what happened on our street.
>
> Q    And what did he tell you?
>
> A    He just--he--he started crying a little bit and he--he said that he was--he was gonna go to hell for the rest of his life and that God will never forgive him for what he did. I asked him what he did, he said that the man, the old man in the yellow house, I murdered him. I—I  was stunned. He told me he--it's like I didn't--I--I didn't know what I was doing, I went over there–
>
> Q    This is what Patrick tells you?
>
> A    Yeah.
>
> Q    When you say that you were stunned, you're referring personally you were stunned when he told you this?
>
> A    Yeah, yes.
>
> Q    I'm sorry for the interruption, what else did he tell you?

A    He told me that he was just going over there to get somethin' out of the house
     because he didn't think that the old man was there, and the incident happened
     and-

Q    Did he tell you what, if anything, he used?

A    Yeah, he told me that he hit the guy with a wrench and then dropped the TV
     on him.

Q    He told you he hit him with a wrench and then he dropped the TV on him?

A    Yes.

(Dkt. #14, Ex. #17, Trial Transcript, p. 524-525).

The instructions in this case were sufficient to inform the jury of all the requirements of
felony murder including the intention to kill, or the intention to do great bodily harm to Oscar
Manning, or the intention to knowingly create a very high risk of death or great bodily harm
knowing that death or such harm would be the likely result of Petitioner's actions.  If the aiding
and abetting charge was applied to the felony murder charge itself the jury's  finding would have
had to satisfy the malice requirement for reasons noted before.  If the jury used the aiding and
abetting instruction to find Petitioner committed any of the other three predicated crimes, that
would have satisfied the third element of the felony murder charge:

   Third, that when he did the act or acts that caused the death of Oscar Manning the
   defendant was committing or helping someone else commit either the crime of
   Robbery or Larceny or Breaking and Entering.

The jury was instructed that the second element of felony murder was:

   Second, that the defendant had one of these three state of minds.  Either, he intended
   to kill, or he intended to do great bodily harm to Oscar Manning, or he knowingly
   created a very high risk of death or great bodily harm knowing that death or such
   harm would be the likely result of his actions.

   The aiding and abetting instruction did not eradicate that element of finding felony

14

murder.  It required that the aider intentionally assisted another in committing the crime, that the

underlying crime was actually committed, that the aider did something to assist the principal, and

that the aider either intended the commission of the crime or knew of the principal's intention to

commit the crime.  Given the adequacy of the instruction taken as a whole, the testimony of Mr.

Donnelly and the fact that the claim was waived, there is little probability that the Court of

Appeals would have reversed the conviction or that on retrial a slightly modified version of the

instruction would have prevented any reasonable fact-finder from finding Petitioner guilty of the

underlying offense.  An evidentiary hearing would not alter this and is thus unnecessary.

### B.        Instruction on the Necessity of a Unanimous Verdict

The state trial court instructed:

> A verdict in a criminal case must be unanimous, to be unanimous each of you must
> agree upon which type or types of First Degree Murder have been proved.  If you
> return a verdict of guilty of First Degree Murder your unanimous verdict must
> specify whether all of you have found the defendant guilty of Premeditated First
> Degree Murder or Felony Murder or both, and that will be set forth on the verdict
> form for your use in the jury room.

(Dkt. #14, Ex. #26, Trial Transcript 1539).  The state trial court then went on to describe the

different offenses to be considered.

Petitioner alleges that the trial court's instruction on the requirement of an unanimous

verdict was general and failed to protect his due process rights with regards to the verdict on

felony murder.  He argues that because of the crimes that he was charged with "[o]nly the armed

robbery and home invasion lifted second-degree murder to the harsher offense of first degree

murder" (Dkt. #1, p. 31 of 50).  As the jury instruction made clear, however, the Michigan

Felony Murder Law, M.C.L. 750.316, lists all of the crimes that elevate second-degree murder to

first-degree, and all of the crimes that the Petitioner was charged with are included in the list,

15

including larceny (Dkt. #14, Ex. #25, p. 1533-1536).  The jury did not have to determine which of the specific underlying crimes satisfied felony murder, only that he was committing one. Petitioners conviction on carjacking (larceny) was sufficient to fulfill the third required element of felony murder (described above in the discussion of the state trial court's felony murder instructions).

Moreover, the United States Supreme Court has held that the Fourteenth Amendment does not mandate unanimous jury verdicts for convictions in non-capital criminal prosecutions in state courts. *Johnson v. Louisiana*, 406 U.S. 356 (1972); *Apodaca v. Oregon*, 406 U.S. 404 (1972).  In *Schad v Arizona*, 501 U.S. 624, 630, 645 (1991), the Supreme Court found that a case could be submitted to the jury on alternative theories, and that a jury need not agree on "which overt act, among several, was the means by which a crime was committed." Therefore, with respect to this portion of Petitioner's claim, he cannot demonstrate the existence of a "constitutional error" as indicated in § 2254(e)(2)(B).

Here, Petitioner's appellate counsel raised several issues in his appeal of right in the Michigan Court of Appeals.  He also successfully obtained a remand to argue a motion for new trial based on newly discovered evidence.  The state appellate court issued a lengthy opinion ruling on these issues.  A fair reading of the opinion shows that at least some of these issues, though meritless, were substantial.  While Petitioner's appellate counsel did not raise every conceivable claim, the Supreme Court had held that failure to raise every colorable argument does not constitute ineffective assistance of counsel: "A brief that raises every colorable issue runs the risk of burying good arguments – those that, in the words of the great advocate John W. Davis, 'go for the jugular' – in a verbal mound made up of strong and weak contentions." *Jones*

16

*v. Barnes*, 463 U.S. 745, 753 (1983).  Appellate counsel's actions here of excluding the claims raised in the motion for relief from judgment in favor of others was a strategic decision and does not constitute ineffective assistance of counsel.

### Issue II: Prosecutorial Misconduct

#### A.    Prosecutor's Use of Misleading Argument

Petitioner alleges that the prosecutor used the misleading argument that Petitioner was guilty as an aider and abettor to co-defendant Reid after entering into a plea agreement with Reid and convicting Reid as an aider and abettor for the same crimes (Dkt. #1, p. 35 of 50).  Petitioner further alleges that the prosecutor attempted to "outwit and entrap Petitioner McLemore by his admission of entering the home with intent to steal" and that the prosecutor used "flip flopping theories of who killed and who aided and abetted" (Dkt. #1, pp. 37-38 of 50).  It should be noted that, similar to Petitioner's Issue I claims, this claim was not preserved at the trial court level because trial counsel never objected to either the prosecutor's closing statement or to the jury instructions.  Regardless, even if the issue had been preserved Petitioner would not have succeeded on the merits.

Petitioner offers no evidence that the prosecutor used anything more than Petitioner's own testimony to support an alternative theory of Petitioner's guilt as an aider and abetter.  The Michigan Court of Appeals found that the prosecutor's primary theory of guilt was Petitioner as the principal and not as the aider and abettor (Dkt. #14, Ex. #30, p. 107) ("Aiding and abetting was clearly not the prosecutor's principal theory of guilt in this case.").  The prosecutor's closing statement clearly indicates that he made a significant effort to discredit Petitioner's testimony, but even if he had failed to do so, Petitioner's testimony amounted to an admission of aiding and

17

abetting and therefore guilt to the same extent as if he had been the principal (Dkt. #14, Ex. #25, p. 1462) ("even if you believe every word he said, he is still is guilty because he is assisting somebody else commit this terrible crimes").  Since "Michigan has, by statute, abolished all common-law distinctions between principals and accessories" Petitioner was on notice that "if the evidence indicates that he was an accessory to [Reid], he may be convicted on the direct charge as an aider/abetter." *People v. Mann*, 395 Mich. 472, 476, 236 N.W.2d 509 (1975); *Mosby v. Burt*, No. 05-61, 2007 WL 1467258, at *22 (W.D. Mich. May 18, 2007).  The prosecutor could have presented the alternative theories of guilt from the very beginning, if he had chosen to do so, but instead he chose to only suggest the alternative theory after Petitioner's own testimony provided evidence of guilt under that theory.  *Thompson v. Booker*, No.05-71882, 2006 WL 3500862, at *12 (E.D. Mich. Dec. 1, 2006).  The fact that someone else had already been convicted as an aider and abetter for this crime is immaterial. *People v. Mann*, 395 Mich. at 477-78, 236 N.W.2d at 511 ("In *People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393, 397 (1974), we reaffirmed the rule that a person may be prosecuted for aiding and abetting without regard to the conviction or acquittal of the principal.").

### B.    Prosecutor's Reference to Suppressed Evidence

Petitioner argues that the prosecutor impermissibly shifted the burden of proof by eliciting from a police witness testimony that the witness had interviewed Petitioner after the trial court had earlier granted Petitioner's motion to suppress the statements resulting from this interview (Dkt. #1, p. 40 of 50).  Trial counsel filed a motion for mistrial which was denied (Dkt. #14, Ex. #22, pp. 1121-24).  In his direct appeal, Petitioner conceded to the Michigan Court of Appeals that he had not properly preserved this issue for review (Dkt. #14, Ex. #31, p. 1).  The

Court of Appeals, nonetheless, reviewed the issue under a "plain error" standard as required by Michigan law (*id.*).  Respondents mis-characterize the prosecutor's question that lead to the controversial testimony,[3] but this is irrelevant because the Court of Appeals found no error.

### 3.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner alleges that his appellate counsel should have, but did not, contended that the claims discussed as Issues I and II were waived as a result of ineffective assistance of trial counsel (Dkt. #1, pp .41-42).  An additional claim of ineffective assistance of trial counsel would have failed because Issues I and II would have failed even if trial counsel had preserved them. To show ineffective assistance of trial counsel Petitioner must show that the facts adduced at an evidentiary hearing "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).  Petitioner has failed to sufficiently demonstrate such facts indicating that his trial or appellate counsel allowed constitutional error to occur.

### III.    RECOMMENDATION

For the reasons indicated above, the undersigned finds that an evidentiary hearing is not required because the issues discussed above can be resolved by reference to the state court record.  *See, Harris v. Konteh*, 198 Fed. Appx. 448, 455 (6th Cir. 2006), finding "while concerns for fairness might seem to advise in favor of granting an evidentiary hearing, we cannot ignore

---

[3] Respondent claimed that the question was "did you at some point in time come to interview some other *witnesses*?" (Dkt. #9, p. 11).   In fact, the question immediately proceeding the testimony was "And *who all* did you interview in regards to this particular investigation?" (Dkt. #14, Ex. #22, p. 1082) (emphasis added).  The witness responded that he had participated in the interview of both defendants on the day of their arrest (*id.*).  This is the only mention of an interview of Petitioner.  There was no testimony regarding the length or content of the interview. No other mention of it was made during the trial, and the prosecutor made no use of it in closing argument.

the language of § 2254(e)(2) and 'Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus.' *Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000)." *See also, Spreitzer v. Peters*, 114 F.3d 1435, 1455-56 (7th Cir. 1997) ("An evidentiary hearing is not necessary when the facts essential to the consideration of the constitutional issue are already before the court."). Accordingly, it is **RECOMMENDED** that Petitioner's request for an evidentiary hearing be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the

20

Court.


s/Steven D. Pepe
United States Magistrate Judge

Dated:  February 25, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 25, 2009.


s/V. Sims
Case Manager