UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK JAMES MCLEMORE,

              Plaintiff,                        CIVIL NO. 2:07-CV-11340

vs.                                DISTRICT JUDGE LAWRENCE P. ZATKOFF
                                       MAGISTRATE JUDGE STEVEN D. PEPE

THOMAS K. BELL, WARDEN,

              Defendant.
_____/

## REPORT AND RECOMMENDATION DENYING
## PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is a Michigan prisoner serving a sentence of life in prison for first-degree

felony murder, MCL 750.316, and a concurrent sentence of 18 ¾ to 50 years for carjacking,

MCL 750.529a. Petitioner filed for a writ of habeas corpus requesting relief from these

convictions on March 28, 2007 (Dkt. #1). On December 30, 2008, this matter was referred for a

Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) (Dkt. #20). For the reasons

indicated below, it is RECOMMENDED that this Petition be DENIED.

I.      BACKGROUND

In his state court case, Petitioner was charged with five counts, which included: (1) open

murder; (2) felony murder; (3) armed robbery; (4) carjacking; and (5) home invasion in the first

degree (Dkt. #14, Ex. 1). On December 8, 1999, Petitioner was convicted of (1) first-degree

felony murder, M.C.L. 750.316(10)(b), (2) armed robbery, M.C.L. 750.529, (3) carjacking,

M.C.L. 750.529a, and (4) first-degree home invasion, M.C.L. 750.110a2, following a jury trial in

the Genesee County Circuit Court at which Dennis R. Lazar represented Petitioner (Dkt. #1; Dkt.

1

#14, Ex. #7).  The jury rejected the premeditated murder charge.  On January 31, 2000, the state trial judge, Judith A. Fullerton, sentenced Petitioner to concurrent terms of life in prison for the felony murder, 18 3/4 to 50 years for both the armed robbery and carjacking convictions, and 95 months to 20 years for the home invasion conviction.  Judge Fullerton subsequently vacated the felonies of armed robbery and home invasion on double jeopardy grounds as predicate felonies to the felony murder conviction.

On his appeal of right, the Michigan Court of Appeals affirmed the convictions in an unpublished December 20, 2002, *per curiam* opinion.  James Rubiner was counsel in the Court of Appeals.  On December 29, 2003, the Michigan Supreme Court denied Petitioner's application seeking leave to appeal.  Thomas Loeb was counsel in the Michigan Supreme Court. Following completion of the appeal by right, on August 25, 2004, Petitioner McLemore filed a Motion for Relief from Judgment pursuant to M.C.R. 6.502 raising issues not presented on direct appeal.  The Genesee County Circuit Court denied the Motion for Relief from Judgment on December 6, 2004, and the Michigan Court of Appeals denied leave to appeal.  On November 30, 2006, the Michigan Supreme Court denied Petitioner's application seeking leave to appeal. Laura Kathleen Sutton was counsel in the trial court, Court of Appeals and Michigan Supreme Court.

Petitioner is serving a controlling sentence of life in prison and is currently serving his sentence at the Carson City Correctional Facility, Carson City, Michigan.  Respondent, Thomas K. Bell, is Warden of that Michigan Department of Corrections correctional facility.

Petitioner challenges his confinement on the following grounds:

I.  The state trial court violated Petitioner's constitutional rights to due process and a fair trial where it gave instructions that did not adequately instruct the jury on the

law to be applied during deliberations.

II. The state court prosecutor's repeated misconduct was so egregious that it wholly undermined the trial, rendered the verdict unreliable, and deprived Petitioner of due process and an impartial trial by jury as guaranteed by the fifth and fourteenth amendment to the federal constitution.

III. Petitioner McLemore was denied his right to a fair trial under the due process clauses of the fifth and fourteenth amendments by the state trial court's exclusion of testimony by Blake Copeland that a codefendant had admitted to acts that corroborated the defense theory.

IV. Petitioner McLemore was denied his right to a fair trial and an impartial jury where it was revealed after trail that the jury engaged in premature deliberations.

V. A series of actions and omissions by Petitioner's trial counsel violated Petitioner's sixth amendment right to the effective assistance of counsel.

VI. Petitioner is entitled to habeas relief because he was denied his right to the effective assistance of counsel on his direct appeal.

Petitioner also separately moved for an evidentiary hearing on Issue IV (Dkt. #2) and Issue VI (Dkt. #15) of his petition. The undersigned previously issued decisions denying Plaintiffs' requests (Dkt. #10 & #21), which were adopted by the District Court (Dkt. #13 & #23) over the objections of the Petitioner.

## II.    LEGAL STANDARD FOR HABEAS REVIEW OF STATE CONVICTIONS

### A.    Standard of Review Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[1]

To be entitled to habeas relief, a petitioner must show that his conviction and/or sentence were imposed in violation of the federal constitution or other federal law. In addition, a petitioner must establish actual prejudice from the error. *Brecht v. Abrahamson*, 507 U.S. 619,

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104- 132, 110 Stat. 1214 (1996).

637-38 (1993). Federal courts must give complete deference to a state court's findings supported by the evidence. *Sumner v. Mata*, 455 U.S. 591, 597 (1982). Petitioner may rebut the presumption of correctness only with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Further, trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas petition unless the error renders the trial so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990); *Matlock v. Rose*, 731 F.2d 1236, 1242 (6th Cir. 1984), *cert. denied*, 470 U.S. 1050 (1985). Even a trial court's abuse of discretion, without more, does not show a violation of the federal constitution and therefore does not warrant habeas relief. *Sinistaj v. Burt*, 66 F.3d 804, 805 (6th Cir. 1995).

AEDPA modified 28 U.S.C. §2254(d) to require that where a claim has been adjudicated on the merits in state court proceedings, federal habeas relief shall not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has explained how §2254(d)(1) is to be applied: "A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

4

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Id*. at 405-06.

A federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11 (emphasis in original).

## B.   Procedural Bar - Exhaustion of State Court Remedies

Before a state prisoner may challenge the constitutionality of his state court conviction by seeking habeas corpus relief pursuant to 28 U.S.C. §2254, the state prisoner must first exhaust available state court remedies by presenting his claims to the state courts, to provide them with an opportunity to remedy any constitutional infirmities in his conviction. 28 U.S.C. §2254(b) and (c); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). A prisoner confined pursuant to a Michigan conviction must raise each habeas issue in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal review of the conviction. *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Dombkowski v. Johnson*, 488 F.2d 68, 70 (6th Cir. 1978).

On the other hand, the Supreme Court stated that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *See Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity). This exception is contained in AEDPA, 28 U.S.C.A. § 2254(B)(2), which states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

On the present petition, it is in the interest of justice to proceed to the merits of Petitioner's claims, which for reasons noted below lack merit warranting any federal court habeas relief.

## III.   ANALYSIS OF PETITIONER'S CLAIMS

### A.   Issues I, II and VI

Petitioner's writ of habeas corpus states Issue VI as:

> Petitioner Is Entitled to Habeas Relief Because He Was Denied
> His Right to the Effective Assistance of Counsel on His Direct
> Appeal.

(Dkt. #15, p. 1; Dkt. #1, p. 9 of 50).

The claim constitutes Petitioner's "cause" argument to excuse his procedural default of two of his six issues, Issues I and II.

Petitioner's writ of habeas corpus states Issue I as:

The State Trial Court Violated Petitioner's Constitutional Rights To Due Process And A Fair Trial Where It Gave Instructions That Did Not Adequately Instruct The Jury On The Law To Be Applied During Deliberations

(Dkt. #1, p. 8 of 50).

Petitioner's writ of habeas corpus states Issue II as:

The State Court Prosecutor's Repeated Misconduct Was So Egregious That It Wholly Undermined The Trial, Rendered The Verdict Unreliable, And Deprived Petitioner Of Due Process And An Impartial Trial By Jury As Guaranteed By The Fifth And Fourteenth Amendments To The Federal Constitution

(*Id.*).

Petitioner attempts to establish cause to excuse his procedural default by stating that his appellate counsel was ineffective for failing to raise these claims in his appeal. Attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A comparable test applies to claims of ineffective assistance of appellate counsel. *See Smith v. Jago*, 888 F.2d 399, 405 n. 1 (6th Cir.1989). Appellate counsel can only be found to have provided ineffective assistance of counsel "if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

With respect to the performance prong of the *Strickland* test, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment. *Id*. at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir.1996) (quoting *Strickland*, 466 U.S. at 686).

The mere failure to raise a claim, even if it is meritorious on appeal, does not constitute ineffective assistance of appellate counsel sufficient to establish cause to excuse a procedural default. *Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994). The United States Supreme Court, in *Smith v. Robbins*, 520 U.S. 259 (2000), stated, among other things:

> In *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) [parallel citations omitted], we held that appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")

*Smith*, 520 U.S. at 288; *see also McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000) (where claim was not "dead bang winner," the petitioner's appellate counsel's failure to raise it on direct appeal did not constitute cause to excuse procedural default).

### *Issue I: Inadequate Jury Instructions*

Here, Petitioner would not have been able to succeed on Issue I (Inadequate Jury Instructions) on appeal because it was waived by trial counsel. Petitioner's Issue I contends that the state trial court violated Petitioner's Constitutional rights to due process and a fair trial when it gave instructions that did not adequately instruct the jury on the law to be applied during deliberations (Dkt. #1, p. 8 of 50). Respondent argues that trial counsel's acquiescence to the instruction amounted to a waiver of objection and appeal (Dkt. #18, p. 2). Respondent cites to a comment by the trial court that "any issue with respect to the adequacy of the court's instruction to the jury was waived by trial counsel at the close of those instructions" (Dkt. #14, Ex. #26).[2]

At trial, the prosecutor indicated that there had been discussions regarding the jury instructions on felony-murder and "it is my understand[ing] that we have decided that the instruction will stand as it presently is, we are not going to give any further instructions" (Dkt. #14, Ex. #26, Trial Transcript 1553:21-24). Trial defense counsel responded "That's my understanding, Judge--" (*Id.* at 1553:25). Because defense counsel approved the decision to leave the jury instructions as they were, Petitioner waived this issue and his right to appeal. As a result, appellate counsel was barred from raising the issue. *People v. Carter*, 462 Mich. 206, 214-15 (2000) ("Because defense counsel approved the trial court's response, defendant has waived this issue on appeal."). It is well established Michigan law that "a party cannot request a certain action in the trial court and then argue on appeal that the action was error." *People v. McCray*, 533 N.W.2d 359, 361 (Mich. Ct. App. 1995) citing *People v. Murry*, 106 Mich. App. 257, 262, 307 N.W.2d 464 (1981). Petitioner, therefore, waived review of alleged instructional

---

[2]Both Respondent (Dkt. #18) and the Michigan Court of Appeals (Dkt. #14, Ex. #31) cite to this quote, but it does not appear on the page in the Trial Transcript that they cite to.

error when he not only withdrew his request of the omitted instruction, but also approved the instructions as given.

As discussed below, even if the Petitioner had not waived his right of appeal on this issue, he would not have succeed because his claim of inadequate jury instructions fails on the merits.  In his petition, Petitioner separates out two distinct ways he believes his jury was provided inadequate instructions: (1.) on aiding and abetting felony murder and (2.) on the instruction on the necessity of a unanimous verdict.

### 1.    Inadequate Instruction on Aiding and Abetting

In its instructions to the jury, after instructing the jury on Count One, first degree premeditated murder (Dkt. #14, Ex. #26, Trial Transcript, pp. 1531-1532) the state trial court instructed on felony murder, including the three elements necessary to find Petitioner guilty.  Petitioner does not object to the state trials court's instruction, and in fact, indicates that the state trial court "first correctly instructed on felony murder" (Dkt. #1, p. 27 of 50).  Those instructions are as follows:

> Regarding Count Two, the charge is known as First Degree Felony Murder.  To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt.  First, that this defendant caused the death of Oscar Manning, again that is, that Oscar Manning died as a result of having been beaten by the defendant.

> Second, that the defendant had one of these three state of minds.  Either, he intended to kill, or he intended to do great bodily harm to Oscar Manning, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

> Third, that when he did the act or acts that caused the death of Oscar Manning the defendant was committing or helping someone else commit either the crime of Robbery or Larceny or Breaking and Entering.

> For the crime of First Degree Felony Murder, accordingly, the prosecutor must prove

each of the following elements as to one of the designated felonies beyond a reasonable doubt.

(Dkt. #14, Ex. #26, Trial Transcript, pp. 1532-1533).

The state trial court later instructed on the concept of aiding and abetting. While the charge seems to be limited to murder, robbery, carjacking or home invasion, Petitioner contends it likely caused error in being applied to felony murder. The challenged instruction was as follows:

All right, members of the jury, in the state of Michigan we have a statute that provides that all person who aid, abet or assist others in the commission of felony crimes are equally guilty.

In this case the defendant may be considered guilty as directly committing these offense as charged or by intentionally assisting someone else in committing them. Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits the crime and can be convicted of the crime as an aider and abetter. To prove the charge under this theory the prosecutor must prove each of the following elements beyond a reasonable doubt.

First, that the alleged crime or crimes were actually committed either by the defendant or someone else. It does not matter whether anyone else has been convicted of the crimes.

Second, that before or during the crime or crimes the defendant did something to assist in the commission of the crimes.

Third, the defendant must have intended the commission of the crime alleged or must have known the other person intended its commission at the time he gave the assistance. In determining whether the defendant intended to help someone else commit the charged offenses, members of the jury, of either Murder, Robbery, Carjacking or Home Invasion, you may consider whether those offenses were fairly within the common unlawful activity of those defendants at that time on that night or early morning, that is, whether the defendant might have expected the charged offense to happen as part of that activity. There can be no criminal liability for any crime not fairly within the common unlawful activity. It is not sufficient for the prosecutor just to prove the defendant intended to help another in the common unlawful activity, it is necessary the prosecutor—for the prosecutor to prove beyond a reasonable doubt that the defendant intended to help someone else commit the charged crimes. It does not matter, members of the jury, however, how much help,

advice or encouragement the defendant gave the other person, however, you must decide whether the defendant intended to help the other person commit the crime and whether his help, advice or encouragement actually did help, advise or encouraged the commission of those crimes as I have previously described them for you.

And further, members of the jury, even if the defendant knew the alleged crime or crimes were planned or were being committed, the mere fact he was present when they were committed is not enough to prove that he assisted the other person in committing them.

Members of the jury, to convict the defendant the evidence must convince you beyond a reasonable doubt that the crimes alleged occurred on or about June 16 or I'm sorry, June 14 through 16 within the City of Burton, County of Genesee, State of Michigan.

(Dkt. #14, Ex. #26, Trial Transcript, pp. 1545-1547).

Petitioner argues that the flaw in the above instruction is that it failed to inform or it mislead the jury as to what the prosecutor had to prove in order to find that Petitioner aided and abetted a felony murder. Petitioner argues that a reasonable juror could find that because Petitioner admitted to aiding and abetting *some* of the charged crimes that he was by admission guilty of aiding and abetting a felony murder solely on the basis of that admission (Dkt. #1, p. 28-29 of 50). That, Petitioner argues, is precisely what the prosecutor told them in his closing argument (Dkt. #1, p. 29 of 50).[3]

---

[3] In his closing argument, the prosecutor made the following statement:

I wanna move on to the second count that you're going to hear, Felony Murder. Felony Murder is essentially Second Degree Murder that occurs during the commission of some other crime. In this case a larceny, a breaking and entering, or a robbery. Again, Second Degree Murder, either intent to kill, intent to do great bodily harm, or that acting in wanton and wilful disregard the likelihood of your actions will cause death or great bodily harm during a larceny, there was absolutely a larceny here, a breaking and entering, there is absolute1y a breaking and entering, or a robbery, there is no question, Mr. Manning was robbed.

* * *

The substantive requirements for finding someone guilty of aiding and abetting felony murder were succinctly described by the Michigan Supreme Court in *People v. Riley*, 468 Mich 135, 140-141 (2003):

> To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. *People v. Carines*, 460 Mich 750, 755; 597 NW 2d 130 (1999).
>
> In order to satisfy the malice standard required under *People v. Aaron*, 409 Mich 672, 299 NW 2d 304 (1980), the prosecution must show that the aider and abettor either intended to kill, intended to cause great bodily harm, or wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm. Further, if an aider and abettor participates in a crime with knowledge of the principal's intent to kill or to cause great bodily harm, the aider and abettor is acting with "wanton and willful disregard" sufficient to support a finding of malice. *See id.* at 733; *People v. Kelly*, 423 Mich 261; 378 NW 2d 365 (1985).

Here, Petitioner does not allege that the felony murder instructions were inadequate or ambiguous, but rather he only alleges that the instructions on aiding and abetting if applied to felony murder — and not limited to the charges of murder, robbery, carjacking or home invasion which the instruction referred to — were inadequate and ambiguous (Dkt. #1, p. 27-28 of 50). Specifically, the Petitioner alleges that based on the improper instructions "[a] reasonable juror

---

I have spent a great deal of time explaining to you why you shouldn't believe him, but even if you believe every word he said, he is still is guilty because he is assisting somebody else commit this (sic) terrible crimes, and the law says it doesn't matter how much help, it doesn't matter that you even assisted just a little bit, if you helped someone commit a crime you're just as guilty, and that is if you believe everything he told you.

(Dkt. #14, Ex. #26, Trial Transcript, pp. 1459, 1462).

could [have found] that because Petitioner McLemore admitted to aiding and abetting some of the charged crimes that he was by admission guilty of aiding and abetting a felony murder solely on the basis of that admission." (*Id.* at p. 13-14 of 50). Yet, this interpretation ignores the clear instructions for felony murder that the judge had given earlier, and which Petitioner agrees were correct. These included the clear limitation that:

> Either, he intended to kill, or he intended to do great bodily harm to Oscar Manning, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

> Third, that when he did the act or acts that caused the death of Oscar Manning the defendant was committing or helping someone else commit either the crime of Robbery or Larceny or Breaking and Entering.

Even the portion of the prosecutor's argument that Petitioner complains about reiterated the critical required malice finding for felony murder of " either intent to kill, intent to do great bodily harm, or that acting in wanton and wilful disregard the likelihood of your actions will cause death or great bodily harm during a larceny."

If one assumes the jury applied the aiding and abetting instructions in its finding of the predicate felonies of armed robbery, carjacking or home invasion, there is no error. This is because the felony murder charge given to the jury clearly required that in addition to finding that the death occurred during the commission of an armed robbery, carjacking or home invasion (felony murder element three) that felony murder element two required that the:

> defendant had one of these three state of minds. Either, he intended to kill, or he intended to do great bodily harm to Oscar Manning, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

Thus, reading the jury instructions as a whole, this malice element of felony murder had to be found whether the finding on the predicate felony was found directly or by way of aiding and

abetting.

If instead of an alternative means of showing Defendant committed a predicate felony for the felony murder, the aiding and abetting instruction was applied to the felony murder charge itself, again there was no error. This is because the aiding and abetting instruction was given and included the limitation:

> In determining whether the defendant intended to help someone else commit the charged offenses, members of the jury, of either Murder, Robbery, Carjacking or Home Invasion, you may consider whether those offenses were fairly within the common unlawful activity of those defendants at that time on that night or early morning, that is, whether the defendant might have expected the charged offense to happen as part of that activity.

This did not distract from the felony murder second requirement of:

> Either, he intended to kill, or he intended to do great bodily harm to Oscar Manning, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

Even if the jurors applied this aiding and abetting instruction to the felony murder itself as being committed by the other participant, Nathan Reid – and not to the robbery, carjacking or home invasion charges – it would still have satisfied the malice element, because Petitioner would have had to be found to have had that offense of felony murder "fairly within the common unlawful activity of those defendants at that time on that night." This means that the felony murder element number two – the intention to kill, or the intention to do great bodily harm to Oscar Manning, or the intention to knowingly create a very high risk of death or great bodily harm to Oscar Manning – would have had to have been "fairly within the common unlawful activity of" Petitioner and his co-defendant Reid. Again the instruction on aiding and abetting states:

> It is not sufficient for the prosecutor just to prove the defendant intended to help

another in the common unlawful activity, it is necessary the prosecutor—for the prosecutor to prove beyond a reasonable doubt that the defendant intended to help someone else commit the charged crimes.

Again the "charged crime" of felony murder had the malice element number two as a required separate finding the jury had to make.

Petitioner's argument also ignores the strong facts that existed in the record on which a reasonable jury could have come to the conclusion that Petitioner was principally responsible for causing great boldly harm to and ultimately killing Mr. Manning and thus clearly found that Petitioner "[e]ither . . . intended to kill, or . . . intended to do great bodily harm to Oscar Manning, or . . . knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions."

As acknowledged in the fact section of Petitioner's writ of habeas corpus, several acquaintances of Petitioner McLemore and Reid related conversations and/or observations regarding McLemore and Reid being in possession of the items missing from Manning's home (Dkt. #1, p. 20 of 50; Dkt. #14, Ex. #17, Trial Transcript, pp. 499, 505, 525-535). The statements of Phillip Michael Donnelly claimed that Petitioner made admissions indicating that he had struck Mr. Manning with a wrench and dropped a television on Manning (Dkt. #14, Ex. #17, Trial Transcript, p. 525). Specifically, Mr. Donnelly testified to the following:

A     I asked PJ, I told him to come back into the hallway and I asked him what happened on our street.

Q     And what did he tell you?

A     He just--he--he started crying a little bit and he--he said that he was--he was gonna go to hell for the rest of his life and that God will never forgive him for what he did. I asked him what he did, he said that the man, the old man in the yellow house, I murdered him. I—I was stunned. He told me he--it's like I didn't--I--I didn't know what I was doing, I went over there–

Q    This is what Patrick tells you?

A    Yeah.

Q    When you say that you were stunned, you're referring personally you were
     stunned when he told you this?

A    Yeah, yes.

Q    I'm sorry for the interruption, what else did he tell you?

A    He told me that he was just going over there to get somethin' out of the house
     because he didn't think that the old man was there, and the incident happened
     and-

Q    Did he tell you what, if anything, he used?

A    Yeah, he told me that he hit the guy with a wrench and then dropped the TV
     on him.

Q    He told you he hit him with a wrench and then he dropped the TV on him?

A    Yes.

(Dkt. #14, Ex. #17, Trial Transcript, p. 524-525).

The instructions in this case were sufficient to inform the jury of all the requirements of

felony murder including the intention to kill, or the intention to do great bodily harm to Oscar

Manning, or the intention to knowingly create a very high risk of death or great bodily harm

knowing that death or such harm would be the likely result of Petitioner's actions.  If the aiding

and abetting charge was applied to the felony murder charge itself the jury's  finding would have

had to satisfy the malice requirement for reasons noted before.  If the jury used the aiding and

abetting instruction to find Petitioner committed any of the other three predicated crimes, that

would have satisfied the third element of the felony murder charge:

     Third, that when he did the act or acts that caused the death of Oscar Manning the
     defendant was committing or helping someone else commit either the crime of

17

Robbery or Larceny or Breaking and Entering.

Again, as noted repeatedly above, the jury was instructed that the second element of felony murder was:

> Second, that the defendant had one of these three state of minds. Either, he intended to kill, or he intended to do great bodily harm to Oscar Manning, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

The aiding and abetting instruction did not eradicate that element of finding felony murder. It required that the aider intentionally assisted another in committing the crime, that the underlying crime was actually committed, that the aider did something to assist the principal, and that the aider either intended the commission of the crime or knew of the principal's intention to commit the crime. Given the adequacy of the instruction taken as a whole, the testimony of Mr. Donnelly and the fact that the claim was waived, there is little probability that the Court of Appeals would have reversed the conviction or that on retrial a slightly modified version of the instruction would have prevented any reasonable fact-finder from finding Petitioner guilty of the underlying offense. Accordingly, Petitioner's claim of inadequate instructions on aiding and abetting fails.

## 2. Instruction on the Necessity of a Unanimous Verdict

The state trial court instructed:

> A verdict in a criminal case must be unanimous, to be unanimous each of you must agree upon which type or types of First Degree Murder have been proved. If you return a verdict of guilty of First Degree Murder your unanimous verdict must specify whether all of you have found the defendant guilty of Premeditated First Degree Murder or Felony Murder or both, and that will be set forth on the verdict form for your use in the jury room.

(Dkt. #14, Ex. #26, Trial Transcript 1539). The state trial court then went on to describe the

different offenses to be considered.

Petitioner alleges that the trial court's instruction on the requirement of an unanimous verdict was general and failed to protect his due process rights with regards to the verdict on felony murder. He argues that because of the crimes that he was charged with "[o]nly the armed robbery and home invasion lifted second-degree murder to the harsher offense of first degree murder" (Dkt. #1, p. 31 of 50). As the jury instruction made clear, however, the Michigan Felony Murder Law, M.C.L. 750.316, lists all of the crimes that elevate second-degree murder to first-degree, and all of the crimes that the Petitioner was charged with are included in the list, including larceny (Dkt. #14, Ex. #25, p. 1533-1536). The jury did not have to determine which of the specific underlying crimes satisfied felony murder, only that he was committing one. Petitioners conviction on carjacking (larceny) was sufficient to fulfill the third required element of felony murder (described above in the discussion of the state trial court's felony murder instructions).

Moreover, the United States Supreme Court has held that the Fourteenth Amendment does not mandate unanimous jury verdicts for convictions in non-capital criminal prosecutions in state courts. *Johnson v. Louisiana*, 406 U.S. 356 (1972); *Apodaca v. Oregon*, 406 U.S. 404 (1972). In *Schad v Arizona*, 501 U.S. 624, 630, 645 (1991), the Supreme Court found that a case could be submitted to the jury on alternative theories, and that a jury need not agree on "which overt act, among several, was the means by which a crime was committed." Therefore, with respect to this portion of Petitioner's claim, he cannot demonstrate the existence of a "constitutional error" as indicated in § 2254(e)(2)(B).

Here, Petitioner's appellate counsel raised several issues in his appeal of right in the

Michigan Court of Appeals. He also successfully obtained a remand to argue a motion for new trial based on newly discovered evidence. The state appellate court issued a lengthy opinion ruling on these issues. A fair reading of the opinion shows that at least some of these issues, though meritless, were substantial. While Petitioner's appellate counsel did not raise every conceivable claim, the Supreme Court had held that failure to raise every colorable argument does not constitute ineffective assistance of counsel: "A brief that raises every colorable issue runs the risk of burying good arguments – those that, in the words of the great advocate John W. Davis, 'go for the jugular' – in a verbal mound made up of strong and weak contentions." *Jones v. Barnes*, 463 U.S. 745, 753 (1983). Appellate counsel's actions here of excluding the claims raised in the motion for relief from judgment in favor of others was a strategic decision and does not constitute ineffective assistance of counsel.

### Issue II: Prosecutorial Misconduct

### 1.    Prosecutor's Use of Misleading Argument

Petitioner alleges that the prosecutor used the misleading argument that Petitioner was guilty as an aider and abettor to co-defendant Reid after entering into a plea agreement with Reid and convicting Reid as an aider and abettor for the same crimes (Dkt. #1, p. 35 of 50). Petitioner further alleges that the prosecutor attempted to "outwit and entrap Petitioner McLemore by his admission of entering the home with intent to steal" and that the prosecutor used "flip flopping theories of who killed and who aided and abetted" (Dkt. #1, pp. 37-38 of 50). It should be noted that, similar to Petitioner's Issue I claims, this claim was not preserved at the trial court level because trial counsel never objected to either the prosecutor's closing statement or to the jury instructions. Regardless, even if the issue had been preserved Petitioner would not have

succeeded on the merits.

Petitioner offers no evidence that the prosecutor used anything more than Petitioner's own testimony to support an alternative theory of Petitioner's guilt as an aider and abetter. The Michigan Court of Appeals found that the prosecutor's primary theory of guilt was Petitioner as the principal and not as the aider and abettor (Dkt. #14, Ex. #30, p. 107) ("Aiding and abetting was clearly not the prosecutor's principal theory of guilt in this case."). The prosecutor's closing statement clearly indicates that he made a significant effort to discredit Petitioner's testimony, but even if he had failed to do so, Petitioner's testimony amounted to an admission of aiding and abetting and therefore guilt to the same extent as if he had been the principal (Dkt. #14, Ex. #25, p. 1462) ("even if you believe every word he said, he is still is guilty because he is assisting somebody else commit this terrible crimes"). Because "Michigan has, by statute, abolished all common-law distinctions between principals and accessories" Petitioner was on notice that "if the evidence indicates that he was an accessory to [Reid], he may be convicted on the direct charge as an aider/abetter." *People v. Mann*, 395 Mich. 472, 476, 236 N.W.2d 509 (1975); *Mosby v. Burt*, No. 05-61, 2007 WL 1467258, at *22 (W.D. Mich. May 18, 2007). The prosecutor could have presented the alternative theories of guilt from the very beginning, if he had chosen to do so, but instead he chose to only suggest the alternative theory after Petitioner's own testimony provided evidence of guilt under that theory. *Thompson v. Booker*, No.05-71882, 2006 WL 3500862, at *12 (E.D. Mich. Dec. 1, 2006). The fact that someone else had already been convicted as an aider and abetter for this crime is immaterial. *People v. Mann*, 395 Mich. at 477-78, 236 N.W.2d at 511 ("In *People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393, 397 (1974), we reaffirmed the rule that a person may be prosecuted for aiding and abetting without

regard to the conviction or acquittal of the principal.").

## 2. Prosecutor's Reference to Suppressed Evidence

Petitioner argues that the prosecutor impermissibly shifted the burden of proof by eliciting from a police witness testimony that the witness had interviewed Petitioner after the trial court had earlier granted Petitioner's motion to suppress the statements resulting from this interview (Dkt. #1, p. 40 of 50). Trial counsel filed a motion for mistrial which was denied (Dkt. #14, Ex. #22, pp. 1121-24). In his direct appeal, Petitioner conceded to the Michigan Court of Appeals that he had not properly preserved this issue for review (Dkt. #14, Ex. #31, p. 1). The Court of Appeals, nonetheless, reviewed the issue under a "plain error" standard as required by Michigan law (*id.*). Respondents mis-characterize the prosecutor's question that lead to the controversial testimony,[4] but this is irrelevant because the Court of Appeals found no error.

### *Ineffective Assistance of Trial Counsel*

Petitioner alleges that his appellate counsel should have, but did not, contended that the claims discussed as Issues I and II were waived as a result of ineffective assistance of trial counsel (Dkt. #1, pp .41-42). An additional claim of ineffective assistance of trial counsel would have failed because Issues I and II would have failed even if trial counsel had preserved them. To show ineffective assistance of trial counsel Petitioner must show that the facts adduced at an

---

[4] Respondent claimed that the question was "did you at some point in time come to interview some other *witnesses*?" (Dkt. #9, p. 11). In fact, the question immediately proceeding the testimony was "And *who all* did you interview in regards to this particular investigation?" (Dkt. #14, Ex. #22, p. 1082) (emphasis added). The witness responded that he had participated in the interview of both defendants on the day of their arrest (*id.*). This is the only mention of an interview of Petitioner. There was no testimony regarding the length or content of the interview. No other mention of it was made during the trial, and the prosecutor made no use of it in closing argument.

evidentiary hearing "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).  Petitioner has failed to sufficiently demonstrate such facts indicating that his trial or appellate counsel allowed constitutional error to occur.

Accordingly, Petitioner is not entitled to habeas relief for Issues I, II or VI of his petition.

**B.     Issue III**

Petitioner next asserts that his right to present a defense was violated when the trial court excluded proposed testimony from Blake Copeland that codefendant stated to him that he was the one who beat the victim to death.  The Court of Appeals denied the claim on the merits. Because the state court reached an objectively reasonable decision in light of established Supreme Court law, Petitioner has not demonstrated entitlement to habeas relief with respect to this claim.  28 U.S.C. § 2254(d).

An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).  Rather, the issue is whether the state court's

application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 426, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Summer v. Mata*, 449 U.S. 539, 546-47 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n. 4 (6th Cir. 1989).

With respect to this claim established law holds that the right to present a defense has long been recognized as a "fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967). Nevertheless, "[a] defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). A defendant's interest in presenting evidence may "bow to accommodate other legitimate interests in the criminal trial process." *Scheffer*, 523 U.S. at 308; *Rock v. Arkansas*, 483 U.S. 44, 55 (1987). There is no unfettered right to offer evidence that is incompetent, privileged or otherwise inadmissible under standard rules of evidence; the exclusion of evidence does not violate the Due Process Clause unless it offends some fundamental principle of justice. *See Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996).

State and federal rule-makers generally have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials" and "[s]uch rules do not abridge an

accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308, quoting *Rock*, 483 U.S. at 56. Similarly, the judges who must make these decisions have "wide latitude" to exclude evidence that is repetitive, marginally relevant, or poses undue risk of harassment, prejudice, or confusion of the issues – "even if the defendant would prefer to see that evidence admitted." *Crane*, 476 US at 689-690; *Delaware v. Van Arsdall*, 475 US 673, 679 (1986). Thus, as the Sixth Circuit has explained, "[o]nly if an evidentiary ruling is so egregious that it results in a denial of fundamental fairness does it violate due process and thus warrant habeas relief." *Baze v. Parker*, 371 F.3d 310, 323 (2004) (internal citations and quotations omitted).

In this case the state courts did not unreasonably apply these principles. Petitioner offered to present Reid's supposed statement through the testimony of Copeland. The hearsay statement was offered under MRE 804(b)(3), which required that the declarant be unavailable (Dkt. #14, Ex. #23, Trial Transcript, p. 1237). Yet, Petitioner never established that Reid was unavailable. On the first day of the joint trial for both defendants, Reid had entered into a negotiated plea agreement. The plea agreement included: "if required, the Defendant will provide truthful testimony in the matter of People versus Patrick McLemore" (*See* Petitioner's Appx. A; Plea Tr, Nov 30, 1999; Genesee Circuit No. 99-4796-FC, p. 5). The plea proceedings concluded just before Petitioner's trial began.

Reid was never called to testify. There is no evidence on the record that trial counsel established the unavailability of the declarant as required by MRE 804. The obvious candidate for unavailability would be Reid's Fifth Amendment right to remain silent. But at the time of the proffered statement, Reid had already waived his Fifth Amendment rights and agreed to testify if

required to do so.  The trial court noted that it was not satisfied that the witness was unavailable (Dkt. #14, Ex. #23, Trial Transcript, p. 1247-1248).  Defense counsel never addressed the concerns of the court.  The court precluded the testimony because the requirements of the rule had not been met (Dkt. #14, Ex. #23, Trial Transcript, p. 1252).

Accordingly, because Petitioner had failed to demonstrate unavailability of the declarant, the result reached by the state court did not amount to an objectively unreasonable application of clearly established Supreme Court law.

Furthermore, Petitioner is not entitled to habeas relief with respect to this claim because any error did not have a substantial impact on the outcome of the trial.  The standard for showing harmless error on collateral review, like the standard for demonstrating that a trial error has occurred, is considerably less favorable to the petitioner than the standard applicable on direct review.  On direct review, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt," and the state has the burden of proof.  *McGhee v. Yukins*, 229 F.3d 506, 513 (6th Cir. 2000), quoting *Chapman v. California*, 386 U.S. 18, 24 (1967).  The test on collateral review is different.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Here, Petitioner made an offer of proof as to the statement (Dkt. #14, Ex. #23, Trial Transcript, p. 1213-1252).  Copeland testified that Reid said: "we went down there and he was all hyper like, and he said, man, Blake, we just got in this motherfucker's house" (Dkt. #14, Ex. #23, Trial Transcript, p. 1218).  He then changed his testimony from "we" to "I" (*id.*).  On cross

examination Copeland again equivocated between the word "we" and "I." (Dkt. #14, Ex. #23, Trial Transcript, p. 1228). Defense counsel was aware of this statement a month before trial (Dkt. #14, Ex. #23, Trial Transcript, p. 1222). Copeland said he did not tell the police about the statement because the police were threatening his brother (Dkt. #14, Ex. #23, Trial Transcript, p. 1223). Detective Elford testified that Copeland had eventually told him that Reid's statement was that "we" got into the house, and "I" might have killed him (Dkt. #14, Ex. #23, Trial Transcript, p. 1236).

Accordingly, even if the statement should have been introduced, it was not nearly as exculpatory as Petitioner claims. Copeland's own credibility would have been subject to attack. Also, as the offer of proof indicates, he equivocated on the important contents of the statement regarding "we" or "I". Even in it's strongest version, Reid still had Petitioner with him during the crime. And because the prosecutor sought conviction on an aiding and abetting theory, it is not clear that the statement would have helped him much at all. Finally, as noted above, the statements of Phillip Michael Donnelly claimed that Petitioner made admissions indicating that he had struck Mr. Manning with a wrench and dropped a television on Manning (Dkt. #14, Ex. #17, Trial Transcript, p. 525). Even if this testimony were improperly excluded, which it was not, any error was harmless because the omission did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). Habeas relief should thus be denied with respect to this claim because the state courts reasonably adjudicated it, and because any error was harmless.

## C.  Issue IV

Jill Ann Miles was a juror in Petitioner's state court trial. She sat through the selection of

the jury, opening arguments, and the presentation of proofs. Yet, she was removed by lot prior to the jury entering into deliberations. After Petitioner was convicted this juror provided an affidavit which claimed juror misconduct during Petitioner's trial (Dkt. #1, Ex. B). Ms. Miles states that two male jurors stated that Petitioner was guilty and that the trial was a waste of time. Ms. Miles indicates that this conversation occurred in the presence of other jurors after opening statements, but prior to the presentation of any proofs. She also states that one juror slept and snored through the trial.

Petitioner claims he sought a hearing on this matter in all state courts in the manner prescribed by state law, without success (Dkt. #2, p. 2). Specifically, he indicates he sought a hearing in the Genesee County Circuit Court, the Michigan Court of Appeals, and the Michigan Supreme Court, all in compliance with state court rules of procedure. This allegation is listed as Issue IV in Petitioner's March 28, 2007, Petition for Writ of Habeas Corpus (Dkt, #1, p. 32).

In its decision denying Petitioner relief with respect to this claim, the state trial court held that Petitioner had failed to establish the required "actual prejudice:"

> Petitioner urges the Court to find that impermissible jury deliberations occurred based on a "to whom it may concern" letter dated approximately one year after the trial from an alternate juror who did not participate in any deliberations, and who did not report any type of improper conduct to the Court or Court officers during the trial. The letter is hearsay and lacks particularity with respect to the identity of the speaker(s) and timing of their alleged remarks. This letter fails to establish any clearly impermissible conduct such as the receipt of extrinsic information or the conduct of independent investigations by a juror, or that a factor outside the evidence such as bribery, threats or coercion affected the outcome of this trial. No such allegation has been made nor is there any evidence that such occurred. No need for an evidentiary hearing has been demonstrated. (Court Opinion, DefApx Vol I, A p 5).

(Dkt. #9, p. 18).

First, none of Petitioner's rights were violated by the state court's failure to hold an

evidentiary hearing on this claim. "Traditionally, the "near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict." *Tanner v. United States*, 483 U.S. 107, 117 (1987). The only recognized exception to this common-law rule related to situations in which the jury verdict was affected by extraneous influences. *Tanner*, 483 U.S. at 117 citing *Mattox v United States*, 146 U.S. 140, 149 (1892). Stated differently, where there is evidence to suggest the verdict was affected by influences external to the trial proceedings, courts may consider juror testimony to impeach a verdict. Yet, where the alleged misconduct relates to influences internal to the trial proceedings, such as juror attitudes, courts may not invade the sanctity of the deliberative process.

As the United States Supreme Court has explained, the distinction between an external influence and inherent misconduct is not based on the location of the wrong, *e.g.*, distinguished on the basis whether the "irregularity" occurred inside or outside the jury room. Rather, the nature of the allegation determines whether the allegation is intrinsic to the jury's deliberative process or whether it is an outside or extraneous influence. *See Tanner*, 483 U.S. at 117-118.

The Sixth Amendment does not obligate state trial courts to investigate every allegation of bias or juror misconduct. *Mu'Min v. Virginia*, 500 U.S. 415, 427, (1991). The duty to inquire arises when a trial court is presented with evidence that an extrinsic influence, which has a reasonable potential for tainting the jury, has, in fact, reached the jury. *Nevers v Killinger*, 169 F.3d 352, 373 (6th Cir. 1999); *see also Remmer v United States*, 347 U.S. 227, 229-30 (1954). Examples of extrinsic influences include "an attempt to bribe a juror, a juror's application for a job in the district attorney's office, and newspaper articles and media attention." *Williams v.*

*Bagley*, 380 F.3d 932, 945 (6th Cir. 2004). Examples of internal influences, in contrast, include the behavior of jurors during deliberations, the jurors' ability to hear and comprehend trial testimony, and the physical and mental incompetence of a juror. *Id*. at 945 n. 7, citing *United States v. Herndon*, 156 F.3d 629, 634-35 (6th Cir. 1998).

This case presents an allegation concerning alleged internal influences not external ones. Judge Lawson encountered a similar claim in *Greene v Lafler*, 447 F.Supp 2d 780, 789 (E. D. Mich. 2006), and denied relief. His reasoning applies with equal force to the present case:

> The first habeas claim alleges that the petitioner was denied his right to a fair trial and an impartial jury when a juror discussed the case outside the courtroom before deliberations began. He says that the person who was overheard talking in the hallway became the jury foreman. According to the petitioner, his mother heard the foreman say that he already knew what his verdict would be. The petitioner contends that the juror was biased against him and that the trial court should have granted an evidentiary hearing on the issue.
>
> The alleged impropriety cited by the petitioner in this case falls into the category of internal influences. The trial court was not required to hold a post-verdict evidentiary hearing to examine the internal processes of the jury. *Tanner v United States*, 483 U.S. 107, 107 S Ct 2739, 97 L Ed 2d 90 (1987). As the Supreme Court explained in *Tanner*, [t]here is little doubt that post verdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of post verdict scrutiny of juror conduct. *Id*. at 120-21 (internal and end citations omitted).
>
> The facts in this case support the trial court's decision not to hold a hearing on the jury's internal processes. The petitioner alleged through counsel at sentencing that his mother, Irma Greene, had heard some jurors discussing the case in the courthouse hallway before they were permitted to deliberate. Although Mrs. Greene was not present at the sentence hearing, defense counsel claimed that Mrs. Greene had heard the juror, who subsequently became the foreman, press another juror for his or her opinion and agreement that there should be a conviction.

Defense counsel requested an adjournment in order to produce Mrs. Greene at an evidentiary hearing on the issue of juror misconduct. The trial court denied the request and declined to hold an evidentiary hearing.

Mrs. Greene subsequently signed an affidavit stating that, on the second day of trial, she was present in a courthouse hallway when she overheard the juror who became foreman say to another person, "I already know what my verdict is going to be." Mrs. Greene also averred that she did not know the jurors were not permitted to discuss the case before they began their deliberations.

The petitioner again raised his claim of jury misconduct in a motion for new trial. He asserted, in keeping with his mother's affidavit, that his mother overheard a juror stating that he already knew what his verdict would be. During oral arguments on the petitioner's motion, the prosecutor urged the trial court to evaluate Mrs. Greene's credibility in light of the fact that she did not report the information before the conclusion of the trial and was not present at sentencing. The trial court described Mrs. Greene's credibility as "[s]uspect to say the least." Tr. Jan. 28, 2000, at 18.

The trial court denied the petitioner's motion for new trial. In doing so, the court noted that Mrs. Greene did not bring the matter to anyone's attention until after the jury was discharged. The Michigan Court of Appeals upheld the trial court's decision not to hold a hearing, stating that relief was not warranted even if the allegations were true because "the allegations involved misconduct inherent in the verdict, not extraneous or outside errors (i.e. undue influence by outside parties)." *People v Greene*, 2001 Mich App LEXIS 2508, at No. 220095, slip op. at 1 (Mich Ct App Sept. 25, 2001).

A claim that a juror was pressured by a fellow juror into arriving at a particular conclusion may not be used to challenge a final verdict. *Doan v Brigano*, 237 F3d 722, 733 (CA 6, 2001) (citing *Tanner*, 483 US at 119-21), abrogated on other grounds by *Wiggins v. Smith*, 539 US at 510. The mere possibility of a juror's preconceived notion of the guilt or innocence of an accused is insufficient to undermine a court's confidence in the outcome of a case. *Lordi v Ishee*, 384 F3d 189, 195 (CA 6, 2004). The possibility also exists that the jury foreman reconsidered his views during deliberations and rendered a decision based on all the evidence. The jurors notified the trial court at one point during their deliberations that they were unable to reach a decision on some of the counts, and they eventually acquitted the petitioner of the criminal sexual conduct charges. That fact is inconsistent with the notion that the jurors were irrevocably committed to finding guilt from the start. But the only way to be certain would be to conduct an investigation into the deliberation process itself, which, of course, is forbidden with good reason, as the Supreme Court explained in *Tanner*. *See Tanner*, 483 US at 120-21.

The same reasoning applies here. Alternate juror Miles did not participate in the jury deliberations, she did not report the alleged misconduct to the state trial court and there is no basis to accept her challenge to the jury verdict. The statements alleged in the letter are not attributed to a specific juror complicating any inquiry involving the alleged wrongdoer even if such hearings were allowed. In this case, even assuming the credibility of juror Miles' affidavit, there is not a showing of an external influence in this case. Thus, investigation into the deliberation process itself by hearing or otherwise is forbidden for the policy reasons expressed by the Supreme Court in *Tanner*. The trial court properly denied Petitioner's motion, and Petitioner has not demonstrated entitlement to an evidentiary hearing or habeas relief with respect to this claim.

**D.     Issues V and VI**

Petitioner's fifth and sixth claims allege ineffective assistance of trial and appellate counsel. Petitioner alleges five instances of ineffective assistance of trial counsel: (1) failing to object to the aiding and abetting instruction; (2) failure to object to the prosecutor's argument; (3) failure to object to prosecutor's question; (4) failure to present sufficient foundation for the admission of Blake Copeland's testimony; and, (5) the failure to object to the jury instruction regarding unanimous verdict. The first three and fifth allegations were already discussed in above in the context of cause to excuse the procedural default. Simply stated, counsel was not ineffective for failing to object to the jury instruction because it correctly stated the law. Nor was he ineffective for failing to object to the alleged acts of prosecutorial misconduct, because those claims were also meritless as discussed above. Finally, as indicated above Petitioner was not entitled to a stronger version of a unanimity instruction.

32

With respect to the failure to provide a foundation for Copeland's testimony, the claim is defaulted because it was not raised in Petitioner's appeal of right. Petitioner can also not show actual prejudice, because the claim is meritless. As discussed above, in *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court adopted a two prong test for determining whether a defendant received adequate assistance of counsel. First, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-691. Second, the petitioner must show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

Had Petitioner attempted to establish unavailability by calling Reid, there is a good chance Reid himself would have been compelled to testify given his plea agreement. It is also reasonable to believe that Reid, even though he had pled guilty, would deny making the statement and minimize his role in the crime. Reid would then also have been subject to cross-examination by the prosecutor who might also have elicited testimony damaging to Petitioner. Simply put, there were serious drawbacks to putting Reid on the stand, and it was not deficient performance instead to take a long shot of getting Reid's alleged statement into evidence through Copeland where it could be contained. In any event, because it is impossible to know whether calling Reid would have resulted in the laying of a foundation for admitting Copeland's testimony, Petitioner has not and cannot meet his burden of demonstrating prejudice.

Finally, Petitioner's ineffective assistance of appellate counsel claim has already been dealt with above in discussing Issues I and II. The claim is logically viewed as an argument to establish cause to excuse Petitioner's procedural default of those claims, but fails for the reasons noted above.

## III.    RECOMMENDATION

On this record it cannot be said (1) that the Michigan Court of Appeals made an unreasonable application of clearly established federal law on any of Petitioner's challenges where it addressed the federal question, nor (2) that there were any federal constitutional violations on those issues the Michigan Court of Appeals did not address under federal law.

Accordingly, for the above stated reasons, **IT IS RECOMMENDED** that Petitioner's request for a hearing and his habeas corpus request be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Filing of objections, which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Dated: February 16, 2010                               s/ Steven D. Pepe
Ann Arbor, Michigan                                    United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing ***Report and Recommendation*** was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 16, 2010.

                                                       s/D. Opalewski
                                                       Case Manager